UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

MICHAEL DECARLO WRIGHT,

Plaintiff,

v.

TNDC, et al.,

Defendants.

Case No. 18-cv-02196-LB

**ORDER DISMISSING AMENDED COMPLAINT**

Re: ECF No. 10

## INTRODUCTION

The plaintiff Michael Wright represents himself in this action and is proceeding *in forma pauperis*. He filed a complaint alleging that residents in his apartment building were harassing him on the basis of his race and alleging other grievances about the building staff. After the court dismissed his original complaint, Mr. Wright filed an amended complaint.[1] Liberally construed, he alleges in his amended complaint that the defendants failed to reasonably accommodate his disability by failing to grant his request to move from his current apartment to an apartment at the 1036 Mission Street Apartment Building Complex. Mr. Wright consented to magistrate-judge

---

[1] First Amend. Compl. ("FAC") – ECF No. 10. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

jurisdiction.² The defendants have not appeared and thus have not consented to magistrate-judge jurisdiction.³ The court dismisses the case without prejudice and with leave to amend under 28 U.S.C. § 1915(e)(2)(B).

## STATEMENT

On April 12, 2018, Mr. Wright filed his original complaint and application to proceed *in forma pauperis*.⁴ The court granted the application.⁵ In his original complaint, Mr. Wright alleged that Steve Lord and other residents in his apartment building — the Kelley Cullen Community— harassed him on the basis of his race and yelled racial slurs at him.⁶ He also alluded to being discriminated against on the basis of a disability. He included 118 pages of hand-written notes as attachments to the complaint.⁷ Mr. Wright named 35 defendants and brought claims under a myriad of federal statutes, federal constitutional amendments, and state claims.⁸

The court concluded that the original complaint failed to state a minimally sufficient claim because the complaint was composed of conclusory allegations that the Tenderloin Neighborhood Development Corporation ("TNDC") discriminated against him, and the factual discussions in the complaint were at times incoherent.⁹ With respect to his allegations regarding disability discrimination, the court concluded that the complaint did not identify Mr. Wright's disability or allege what services the defendants denied to him.¹⁰ The court advised Mr. Wright of the elements that he needed to allege in order to state a claim for discrimination under the Americans with

---

² Consent – ECF No. 7.

³ *See* Docket.

⁴ Compl. – ECF No. 1 Application – ECF No. 2.

⁵ Order – ECF No. 4.

⁶ Compl. – ECF No. 1 at 6.

⁷ Compl. Ex. Volume 1 – ECF No. 1-1; Compl. Ex. Volume 2 – ECF No. 1-2.

⁸ Compl. – ECF No. 1 at 10.

⁹ Order – ECF No. 9 at 4.

¹⁰ *Id.* at 5.

Disabilities Act.[11] The court dismissed the complaint under 28 U.S.C. § 1915(e)(2)(B) and granted leave to amend.[12]

On June 14, 2018, Mr. Wright filed an amended complaint.[13] In the amended complaint, Mr. Wright states "I'm the plaintiff in in the above named case and I have a disability and by the same response I am being treated by Doctor Mr. Doug Price Hansen."[14] Most of these allegations in his amended complaint mirror the allegations in his previous complaint; he alleges that residents at his apartment building harass him and yell racial slurs at him.[15] The following are new allegations in the amended complaint:

- "[T]he court was not informed yet about my mental stress disability, the said attached hereto Mr. Wright's Exhibit Volume #3 has documentation from my treating Doctor Mr. Doug Price Hansen which proves that I do in fact have post dramatic stress syndrome th[at] compound my overall mental caused by the defendants."[16]
- The defendants are violating the ADA "by a means of refusing me to [accommodate] transfer[r]ing to 1036 Mission St. [Apartment] Building Complex which is a brand new building that is owned managed and operated by TNDC, and by the same respond TNDC has two different types of application from me the mov[a]nt Mr. Michael Decarlo Wright a standard application while the second is a American Disabilities Act Reasonable Accommodation, because of my permanent life long disability."[17]
- "This latest hands on demonstrated experience pertaining to the very legal transferring me from one TNDC apartment building complex to additional TNDC apartment building complex that's located and addressed at 1036 Mission St. all because of both the mental stress disability and the additional hardship of paying $448.00 per month for two different storage lockers—along with paying $785.00 per month for the rent of the small studio that I'm living in all further compounded because my property in storage is not under the same roof with me the owner and not able to enjoy my property."[18]

---

[11] *Id.*

[12] *Id.*

[13] FAC – ECF No. 10.

[14] *Id.* at 1.

[15] *See, e.g.*, FAC, Volume 1 – ECF No. 10-1 at 21–22.

[16] FAC – ECF No. 10 at 8.

[17] FAC, Volume 1 – ECF No. 10-1 at 13–14.

[18] *Id.* at 14.

- "I have been having protected civil rights and American Disability Act and well over several state and federal law rights violated year after year after year and after year, along with other black skin color tenants by both racist, bias, and bigot TNDC staff and tenants alike."[19]

Additionally, Mr. Wright's amended complaint includes 62 pages of photocopies from legal treatises discussing the Americans with Disabilities Act, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and § 1981, § 1983, and § 1985 claims.[20] Mr. Wright also includes several new documents, including: (1) a Reasonable Accommodation/Modification Request Form signed by Doug Price-Hanson, M.D. (Mr. Wright's psychiatrist); (2) a response letter from TNDC to Mr. Wright regarding his reasonable accommodation request; (3) a letter from Mr. Price-Hanson; and (4) a letter from Associate Director of Property Management TNDC Savatore Russo to Mr. Wright. In the Reasonable Accommodation Request Form, Dr. Price-Hanson states that Mr. Wright has a permanent disability, and that:

> Mr. Wright requires a large one bedroom unit. He currently lives in a studio unit that is not large enough to contain his belongings. He is under severe financial stress due to having to pay $548 per month in addition to his monthly rent of $750.00. The financial stress worsens his mental health disability.[21]

The response letter to Mr. Wright from the TNDC states that Mr. Wright's reasonable accommodation request has been denied and notes:

> TNDC policy does not allow unit transfers between buildings. Resident can apply to other TNDC properties once the application process for those properties begin. Resident can also request a building transfer through DAH program.[22]

The letter from Dr. Price-Hanson states:

> [Mr. Wright] has told me that his application was denied on the grounds that he had not proven that he faces a hostile environment and financial hardship at his current residence. From my experience in working with Mr. Wright, he has indeed experienced both on an ongoing basis. . . . As a result of these stresses, his mental health condition has been adversely affected. He has seen me in clinic at greater frequency, including drop-in appointments due to worsening anxiety, depression,

---

[19] *Id.*

[20] FAC – ECF No. 10 at 2–64; FAC, Volume 1 – ECF No. 10-1 at 1–12.

[21] FAC, Volume 1 – ECF No. 10-1 at 42.

[22] *Id.* at 56.

ORDER – No. 18-cv-02196-LB            4

and stress. Please reconsider his application for a transfer in that he appears to satisfy the criteria given him as reasons for his denial.[23]

The letter from Mr. Russo states:

> . . . TNDC is unable to grant the requested accommodation. While it is true that TNDC is the managing agent for both KCC and 1036 Mission, these properties are under separate ownership and TNDC manages the properties pursuant to two separate management agreements. That TNDC manages both properties does not necessarily mean that they share the same subsidies and/or eligibility requirements. As such, TNDC's management of both properties would not preclude the need for independent verification of eligibility for housing at 1036 Mission. Although the Request does not indicate whether or not you previously applied for housing at 1036 Mission, to the extent you did not do so, the application period for that property ended on March 22, 2018 and the waitlist is now closed. In view of all of these factors, it is not reasonable for TNDC to require the owner of 1036 Mission permit you to transfer from KCC into a 'large' one-bedroom apartment at 1036 Mission, even if one such unit were actually available.[24]

Mr. Wright's amended complaint asks the court to "move TNDC executive director Don Falk to grant the reasonable accommodation modification request form, and transfer me the tenant, and plaintiff Mr. Michael Decarlo Wright from the small stupid apartment unit that's addressed at 220 Golden Gate Ave, to a large one bedroom apartment unit the addressed at 1036 Mission St., in order [to] accommodate both my disability, my hostile living condition of being yelled at, screamed at by a m[eans] of very terrorists threats by additional white skin color tenant Steve Lord. . ."[25]

## ANALYSIS

**1. *Sua Sponte* Screening — 28 U.S.C. § 1915(e)(2)**

A complaint filed by any person proceeding *in forma pauperis* under 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent that it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary

---

[23] *Id.* at 44.
[24] *Id.* at 46.
[25] *Id.* at 21.

relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*). Section 1915(e)(2) mandates that the court reviewing an *in forma pauperis* complaint make and rule on its own motion to dismiss before directing the United States Marshals to serve the complaint under Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1127. The Ninth Circuit has noted that "[t]he language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (internal quotations omitted).

### 2. The Complaint Fails to State a Clam

The complaint references the Americans with Disabilities Act, federal RICO claims, federal constitutional and "civil rights" claims through § 1983, and state-law claims. The court first discusses the deficiencies with the ADA claim, and then addresses the deficiencies with the complaint more broadly.

As to Mr. Wright's ADA claim, as the court stated in its prior order, to state a claim under the Americans with Disabilities Act, a plaintiff must allege that: (1) he is an individual with a disability, (2) he is otherwise qualified to participate in or receive the benefit of the entity's services, (3) he was discriminated against solely by reason of his disability, and (4) the defendant is a public entity. *Zukle v. Regents of Univ. of Calif.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

In addition, although the ADA does not expressly provide for reasonable accommodations, Congress entrusted the Attorney General with the authority to promulgate regulations defining the scope of the prohibitions set forth in Title II of the ADA. *See* 42 U.S.C. § 12134(a). One such implementing regulation is 28 C.F.R. § 35.130(b)(7), which provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. To state a claim for failing to provide reasonable accommodations, the plaintiff must show why any accommodations that an entity did provide were not reasonable." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001) (quoting *Memmer v. Marin County Courts*, 169 F.3d 630, 633–34 (9th Cir. 1999)).

Here, although Mr. Wright amended his complaint to include facts alleging that he has a disability, his complaint fails to state a valid ADA claim.

First, his complaint fails to state a valid ADA claim because his residential apartment building at the Kelley Cullen Community is not a place of public accommodation covered by the ADA's disability discrimination laws. "The ADA only applies to public accommodations, which include hotels and motels, but not residential apartment complexes." *Glasby v. Mercy Hous., Inc.*, No. 17-CV-02153-DMR, 2017 WL 4808634, at *5 (N.D. Cal. Oct. 25, 2017) (citing 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."); 42 U.S.C. § 12181(7)(A) (definition of "public accommodation" includes "an inn, hotel, motel, or other place of lodging")). "Public accommodation" does not include residential apartment complexes. *Id.* (citing *Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) ("[T]he legislative history of the ADA clarifies that "other place of lodging" does not include residential facilities."); *Arceneaux v. Marin Hous. Auth.*, No. 15-CV-00088-MEJ, 2015 WL 3396673, at *7 (N.D. Cal. May 26, 2015) (concluding that public housing apartment complex did not fall within the bounds of the ADA)). Because Mr. Wright's apartment complex is not subject to ADA compliance, he may not bring a suit against the defendants for alleged ADA violations related to his housing.[26]

---

[26] Although the ADA does not apply to residential apartment buildings, the Fair Housing Act ("FHA") prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), or "because of a handicap," 42 U.S.C. § 3604(f)(2). A claim under the FHA based on failure to accommodate a disability requires the
*(cont'd)*

Second, the complaint fails insofar as it brings ADA claims against individually named defendants. The amended complaint names "TNDC, et al." on the first page, but does not otherwise specify who he brings his claims against, or which claims are brought against which defendants. Mr. Wright's original complaint named 35 defendants, most of whom are individuals.[27] Many of his grievances are directed at Don Falk — who Mr. Wright states is the executive director of TNDC — and other TNDC staff.[28] The ADA does not provide for suit against individuals or public officials acting in their individual capacity. See 42 U.S.C. § 12132.

As to Mr. Wright's additional claims, the amended complaint suffers the same deficiencies the court identified in its order dismissing the original complaint. In its prior order, the court explained, a complaint that is "prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d at 1179 (9th Cir. 1996). Here, the amended complaint alludes to various federal and state claims, but does not include a "simple, concise, and direct" statement that gives "fair notice" of the alleged wrong and states "the elements of the claim plainly and succulently. Fed. R. Civ. P. 8(d)(1); *Pickard v. WMC Mortgage Corp.*, 2009 WL 3416134, at *3 (E.D. Cal. Oct. 21, 2009) (citing *Jones v. Cmty. Redev. Agency,* 733 F.2d 646, 649 (9th Cir. 1984)). The allegations in the complaint are hand-written, rambling, and at times incomprehensible. Aside from his allegations regarding his reasonable accommodation request to move apartments, the complaint does not clearly express the facts giving rise to Mr. Wright's claims.

---

Plaintiff to demonstrate that: (1) she suffers from a disability as defined by the Act; (2) Defendant knew or reasonably should have known of the disability; (3) accommodation of the disability "may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) [D]efendant[ ] refused to make such accommodation." *Thomas v. San Francisco Hous. Auth.*, No. 3:16-CV-03819-CRB, 2017 WL 878064, at *7 (N.D. Cal. Mar. 6, 2017). The FHA prohibits from denying an equal opportunity to use and enjoy a dwelling by refusing to accommodate his disability. *Id*. The court notes these elements for Mr. Wright's reference, but expresses no opinion as to whether Mr. Wright has a valid claim under the FHA.

[27] Compl. – ECF No. 1 at 1.

[28] FAC, Volume 2 – ECF No. 10-1 at 18.

The court also cautions Mr. Wright about the people he may sue. For example, his complaints about his neighbors do not state a federal claim. Generally, federal jurisdiction is predicated on a violation of federal law. 28 U.S.C. § 1331. It can also be based on diversity jurisdiction, meaning that the opposing parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1441.

Mr. Wright may file a Third Amended Complaint that clearly alleges his claims and the factual allegations that support those claims. Among other things, his Third Amended Complaint must:

1. be double-spaced, *see* N.D. Cal. Civ. L.R. 3-4(c)(2),
2. contain paragraph breaks, *see* Fed. R. Civ. P. 10(b),
3. begin each paragraph with a paragraph number in ascending order (i.e., the very first paragraph in the complaint should be numbered paragraph 1, the second paragraph numbered paragraph 2, and so on, without skipping or reusing any numbers), *see id.*,
4. limit each paragraph as far as practicable to a single set of circumstances, *see id.*; while the court does not impose any strict limits, as a word of advice to Mr. Wright, if a single paragraph goes on for more than half a page, it may be too long and may be improperly combining different circumstances together,
5. use clear headings to delineate each claim alleged (e.g., ADA versus 42 U.S.C. § 1983 versus FHA, etc.), *see id.*, and
6. plead clear facts that support each claim under each header.
7. not include photocopies of his research, including copies of legal statutes, books discussing the law, or grievance procedures.

The point of a complaint is to give notice — as succinctly as possible — about the facts that support the claims. Mr. Wright's approach is too much. Again, the standard is "a short and plain statement showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

### 3. Notice for Pro Se Litigants

The court attaches another copy of the district court's handbook *Representing Yourself in Federal Court: A Handbook for Pro Se Litigants*. It provides information on what is required to

plead a claim in federal court, as well as instructions on how to proceed at every stage of a case, including discovery, motions, and trial. Mr. Wright may also wish to seek assistance from the Legal Help Center, a free service of the Volunteer Legal Services Program, by calling 415-782-8982, or by signing up for an appointment on the 15th floor of the Federal Courthouse at 450 Golden Gate Avenue, San Francisco, California. At the Legal Help Center, a pro se party can speak with an attorney who may be able to provide basic legal help (but not representation). A copy of the Legal Help Center's flyer is attached.

## CONCLUSION

The court dismisses Mr. Wright's complaint without prejudice and with leave to amend. If Mr. Wright chooses to file an amended complaint, he must do so by August 16, 2018.

Mr. Wright may also dismiss his case voluntarily by filing a one-page notice of voluntary dismissal, which will operate as a dismissal without prejudice, thereby allowing Mr. Wright to file a complaint later if he can cure the complaint's deficiencies.

If Mr. Wright does not file a First Amended Complaint by August 16, 2018, or ask for an extension of the time to do so, the court will close the case without prejudice to Mr. Wright's timely refiling it if he can cure the complaint's deficiencies.

**IT IS SO ORDERED.**

Dated: July 11, 2018

_____
LAUREL BEELER
United States Magistrate Judge